UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FREDERICK W. FISHER, JR., | : | CIVIL NO: **4:CV-04-1945** |
| | : | |
| Plaintiff | : | |
| | : | (Judge McClure) |
| v. | : | |
| | : | (Magistrate Judge Smyser) |
| JANAN LOOMIS, | : | |
| PHYSICIAN HEALTH CARE CORP., | : | |
| DONALD FISK, | : | |
| MILTON FRIEDMAN, | : | |
| DONALD JONES, | : | |
| PAUL DELROSSO, | : | |
| CARL PAUCI, | : | |
| JOSEPH NISH, | : | |
| RAYMOND COLLERAN, | : | |
| EDWARD BURKE, | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

On September 1, 2004, the plaintiff, a prisoner proceeding *pro se*, commenced this 42 U.S.C. § 1983 action by filing a complaint.  An amended complaint was filed on December 15, 2005.  Doc. 12.  A motion to dismiss the amended complaint was filed by defendants DelRosso, Nish, Jones, Colleran, Friedman, Pauci, Burke and Fisk on May 27, 2005.  Doc. 33.  A supporting brief was filed on June 13, 2005.  Doc. 39.  A brief in opposition was filed on September 26, 2005.  Doc. 75.  A reply brief was filed on October 4, 2005.   Doc. 78.

A motion to dismiss the amended complaint was filed by defendants Loomis and Physician Health Services, Inc. on June 21, 2005 and a supporting brief was filed.  Docs. 44, 45.  A brief in opposition was filed on September 26, 2005.  A reply brief was filed on October 7, 2005.  Doc. 80.

The amended complaint alleges that on December 9, 2002, defendants Loomis and Fisk, employed by Physician Health Services, Inc., and defendant Friedman conspired to end the plaintiff's life.  All defendants caused the plaintiff to lose the use of his left arm, to lose his sight, to suffer extreme torture, battering and emotional distress, to lose liberty, property, and access to the court, legal material, evidence, and loss of a $600,000 case.

The amended complaint alleges that when on September 9, 2002 the plaintiff went to prison sick call and told defendant Loomis that he wanted to be checked for testicle cancer and left arm pain and was examined, he was presented with a bill for motrin.  He considered the $4.00 bill to be unjust, and stated that he would sue to have his money returned, stating, "I'm going to sue this fucking place."  He was accused of misconduct for saying this, and he was also accused of assaulting defendant

Loomis.  The plaintiff alleges that defendants Fisk and Friedman
told defendant Loomis than charging a misconduct against the
plaintiff would discourage law suits by prisoners and that
disciplinary confinement might be an ordeal the plaintiff could
not survive.  He asserts that he was punished to discourage
litigation by himself and other prisoners.

The plaintiff alleges that on September 9, 2002 he was
placed "in the hole."  He alleges that during his disciplinary
hearing he was not permitted to call witnesses and was not able
to refer to his notes because his hands were cuffed behind his
back.  He asserts that defendants Colleran, Nish, Burke, DelRosso
and Pauci, reviewing the plaintiff's disciplinary conviction,
knew of due process violations in the disciplinary process and
yet refused to overturn his disciplinary conviction.

The plaintiff alleges that he fractured his arm on
September 30, 2002, while in disciplinary confinement.  He
alleges that the fracture followed a heart attack that caused him
to fall, and that the heart attack was the result of his wrongful
disciplinary confinement.  He alleges that defendant Loomis
failed to direct the medical staff to treat the plaintiff's

fractured arm.  He alleges that he has lost the use of his left arm.  He alleges that the defendants conspired to end his life.

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of the plaintiff's case; the court must decide whether, even if the plaintiff were able to prove all of his allegations, he would be unable to prevail.  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  In a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the burden is on the moving party to show that there is no claim.  *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980).  When evaluating a motion to dismiss, the court must accept all material allegations of the complaint as true and draw all inferences in the light most favorable to the plaintiff.  *Pennsylvania House, Inc. v. Barrett*, 760 F. Supp. 439, 449 (M.D. Pa. 1991).  However, "conclusory allegations of law, unsupported conclusions and unwarranted inferences need not be accepted as true." Id. at 449-50.  A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957); *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir. 1988).

4

The plaintiff claims a violation of his right to due process of law in that he was not afforded the procedural rights at his hearing to which he was entitled.

The defendants argue that placement in disciplinary custody for 180 days is not as a matter of law an atypical or significant hardship.

A due process claim requires a two part analysis.  First, the court must determine whether the interest asserted by the plaintiff is within the scope of protection of life, liberty, or property found in the due process clause.  A protected interest may arise from two sources - the due process clause itself and the laws of the States.  *See Hewitt v. Helms*, 459 U.S. 460, 466 (1983); *Layton v. Beyer*, 953 F.2d 839, 842 (3d Cir. 1992). Second, if the interest is protected by the Fourteenth Amendment, the court must determine what procedures constitute "due process of law."  *Ingraham v. Wright*, 430 U.S. 651, 672 (1977).

In *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court addressed the question of when state prison regulations create liberty interests protected by the Due Process Clause.  The Court held that state created liberty interests are

5

limited to freedom from restraint which "imposes atypical and
significant hardship on the inmate in relation to the ordinary
incidents of prison life." *Id*. at 484.  In *Sandin*, the inmate,
Conner, was sentenced to thirty days of disciplinary confinement
in the Special Holding Unit.  As a result of Conner's
disciplinary segregation he "had to spend his entire time alone
in his cell (with the exception of 50 minutes each day on average
for brief exercise and shower periods, during which he
nonetheless remained isolated from other inmates and was
constrained by leg irons and waist chains.)"  *Id*. at 494 (Breyer,
J. dissenting).   The Court concluded that Conner's thirty days
in the Special Holding Unit did not impose the type of atypical
significant deprivation in which the state may conceivably create
a liberty interest. *Id*. at 486.  The Court noted that in that
case disciplinary confinement at the prison in question, with
only insignificant exceptions, mirrored conditions imposed on
inmates in administrative and protective custody; that based on a
comparison of inmates inside of and outside of disciplinary
segregation, placement in segregation for thirty days did not
work a major disruption in his environment; that disciplinary
action did not inevitably affect the duration of Conner's
sentence; and that the "regime to which he was subjected was
within the range or confinement to be normally expected for one

6

serving an indeterminate term of 30 years to life." *Id.* at 486-87.

The *Sandin* "atypical and significant hardship" test has been applied in cases brought by prisoners held in disciplinary and administrative segregation for various lengths of time.  *See, e.g., Carter v. Carriero*, 905 F.Supp. 99 (W.D.N.Y. 1995) (270 days in disciplinary confinement not an atypical or significant hardship under *Sandin*); *Penrod v. Zavaras*, 94 F.3d 1399 (10th Cir. 1996) (nine months of confinement in administrative segregation did not impose an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life); *Speed v. Stott*, 941 F.Supp. 1051 (D. Kan. 1996) (indefinite placement in administrative segregation pending an ongoing investigation, which at the time of the holding had continued for over three years, did not rise to the level of an atypical or significant hardship under *Sandin*); *Scales v. District of Columbia*, 894 F.Supp. 14 (D.D.C. 1995) (placement in administrative segregation for four months is not a violation of due process under *Sandin).*

The United States Court of Appeals for the Third Circuit addressed a Pennsylvania inmate's claims that his placement and confinement in administrative custody for fifteen months violated

7

his due process rights in *Griffin v. Vaughn*, 112 F.3d 703 (3d
Cir. 1997).  After considering the reasons an inmate may be
placed in administrative segregation and the conditions the
plaintiff in that case was held under in administrative
detention, the court concluded that "exposure to the conditions
of administrative custody for periods as long as 15 months 'falls
within the expected parameters of the sentence imposed [on him]
by a court of law,'" and that the inmate's commitment to and
confinement in administrative custody did not deprive him of a
liberty interest. *Id.* at 708.

     In *Smith v. Mensinger*, 293 F.3d 641, 652 (3d Cir. 2002),
the Court held that a seven month disciplinary confinement does
not constitute a deprivation of a liberty interest for a prisoner
because it is not an atypical and significant hardship in
relation to the ordinary incidents of prison life.  In *Mitchell
v. Horn*, 318 F.3d 523, 531-533 (3d Cir. 2003), the Court focused
upon the conditions of confinement differences between general
population and the particular disciplinary custody condition in
reversing a *sua sponte* frivolousness dismissal.  This case is,
unlike *Mitchell*, subject to briefing by all parties, and does not
ostensibly involve inhumane conditions of disciplinary
confinement.

The plaintiff's due process claim should be dismissed.

The defendants argue that the plaintiff's claim that it amounted to a violation of his First Amendment rights for him to be punished for threatening to "sue this fucking place" fails to state a claim upon which relief can be granted.  We agree.  There is no First Amendment right possessed by a prisoner to use profanity without disciplinary consequence.

The plaintiff's claim of a retaliatory confinement to disciplinary custody should be dismissed, because the plaintiff was adjudicated guilty of stating "I'm going to sue this fucking place" and of an assault on a prison contractual medical employee.  The plaintiff acknowledged that he was angry after his medical examination by defendant Loomis and his being assessed a $4.00 medication charge and that he asserted "I'm going to sue this fucking place."  He denies that he assaulted defendant Loomis.  The angry declaration of the plaintiff of his intention to sue did not constitute an out-of-bounds basis for prison officials to impose discipline merely because the subject matter of the declaration involved the legal process.  The angry and profane announcement of an intention to sue was in no sense a necessary or appropriate component of the ordinary and protected

9

right of access to the courts; on the contrary, it is in part to avoid such unproductive and potentially harmful confrontations that we value our litigation process and the right of all of access to the courts.

The defendants argue that the plaintiff's claim that he was wrongfully cited for misconduct by an unauthorized contract worker is not a claim upon which relief can be granted.  We agree.  There is no federally protected right on the part of a state prisoner to be cited only by certain classifications of prison personnel.

The plaintiff claims that he was not afforded due process at his disciplinary hearing in that he was handcuffed during the hearing and because he was denied the right to present witnesses. Under *Wolff v. McDonnell*, 418 U.S. 539 (1974), a prisoner facing disciplinary charges and the potential imposition of an atypical and significant hardship in comparison to imprisonment in general has the right to present evidence and call witnesses.  However, the fact that imperfect process was afforded, or process was afforded constituting less than the full process to which the plaintiff would have been entitled if he had faced an atypical and significant hardship, is of no constitutional significance

10

when the plaintiff was not facing the loss of a constitutionally protected liberty interest.   *Smith v. Messinger, supra*.

     The plaintiff alleges that the defendants conspired against him.  The correctional defendants argue that the allegations of conspiracy should be dismissed because the allegations are broad and conclusory.  The plaintiff claims that his legal materials were destroyed and that he suffered physical deprivations and injuries as the result of the defendants' conduct.  He claims that his Eighth Amendment rights were violated.  The defendants assert that these claims should be dismissed because individual defendants' personal involvement in conduct constituting a violation of the plaintiff's constitutional rights is not alleged.

     The plaintiff has presented a broad and conclusory conspiracy claim.  The complaint does allege an object of the alleged conspiracy, to subject the plaintiff to onerous disciplinary conditions of confinement so as to end his life and so as to deter other prisoners from resorting to law suits.  The actions allegedly taken by co-conspirators to effect the conspiracy are the acts of charging the plaintiff with a

misconduct and causing him to be committed for six months to
disciplinary custody.

    The defendants argue that the claim of a conspiracy to
deny the plaintiff his federally protected rights must be based
upon allegations of facts that show that the purported
conspirators reached some understanding or agreement, or plotted,
planned and conspired together.  The defendants cite *Rose v.
Bartle*, 871 F.2d 331, 366 (3d Cir. 1989), involving a RICO, 18
U.S.C. § 1962, conspiracy pleading.  The plaintiff's conspiracy
claim here is a 42 U.S.C. § 1985 claim.

    42 U.S.C. § 1985 provides:

    **§ 1985.  Conspiracy to interfere with civil
    rights**

    **(1) Preventing officer from performing duties**.
    If two or more persons in any State or Territory
    conspire to prevent, by force, intimidation, or
    threat, any person from accepting or holding any
    office, trust, or place of confidence under the
    United States, or from discharging any duties
    thereof; or to induce by like means any officer
    of the United States to leave any State,
    district or place, where his duties as an
    officer are required to be performed, or to
    injure him in his person or property on account
    of his lawful discharge of the duties of his
    office, or while engaged in the lawful discharge
    thereof, or to injure his property so as to
    molest, interrupt, hinder, or impede him in the
    discharge of his official duties;

                            12

**(2) Obstructing justice; intimidating party, witness, or juror.**   If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

**(3) Depriving persons of rights or privileges.** If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or

13

> Vice-President, or as a member of Congress of
> the United States; or to injure any citizen in
> person or property on account of such support or
> advocacy; in any case of conspiracy set forth in
> this section, if one or more persons engaged
> therein do, or cause to be done, any act in
> furtherance of the object of such conspiracy,
> whereby another is injured in his person or
> property, or deprived of having and exercising
> any right or privilege of a citizen of the
> United States, the party so injured or deprived
> may have an action for the recovery of damages,
> occasioned by such injury or deprivation,
> against any one or more of the conspirators.

State prisoners are not a class of persons entitled to protection against class-based conspiracy under 42 U.S.C. § 1985. *Nakao v. Rusher*, 653 F.Supp. 856 (N.D. Cal. 1982); *reh. den.* 545 F.Supp. 1091; *Bumanen v. Hannon*, 623 F.Supp. 445 (D.Minn. 1985).

The events leading to the plaintiff's disciplinary confinement allegedly involved the participation of each of the defendants. However, apart from superimposing the word "conspiracy" upon the events, the plaintiff's allegations consist of relating the events. The imposition of a disciplinary process and of punishment against a prisoner by prison staff is not a conspiracy to violate the prisoner's federally protected rights in the absence of a plan and agreement to violate the prisoner's federally protected rights and in the absence of the

14

identification of some right and the basis for inferring a
conscious agreement to deny or to withhold it.

The motion of defendants DelRosso, Nish, Jones, Colleran,
Friedman, Pauci, Burke and Fisk to dismiss the complaint should
be granted.

Defendants Loomis and Physician Health Services, Inc.
have argued that the complaint should be dismissed as to them
because an actionable claim of conspiracy under 42 U.S.C.
§ 1985(3) is not alleged, because an actionable claim under 42
U.S.C. § 1986 is not alleged, because the plaintiff has not
stated a claim upon which relief can be granted of deliberate
indifference to a serious medical need and because no facts
involving defendant Prison Health Services, Inc. are alleged.

As stated above, an actionable cause of action against
any defendant under 42 U.S.C. § 1985 is not stated, and
accordingly the conspiracy claim should be dismissed as to
defendant Loomis.  There is no allegation showing a plan or
agreement, no allegation of a racial or a class-based
discriminatory animus, no allegation of a conspiratorial
objective to deprive the plaintiff of equal protection under the

law and no allegation of an act by defendant Loomis in
furtherance of a conspiracy.

There is not an allegation made in the plaintiff's
complaint that if true would support an inference that any
defendant has been deliberately indifferent to a serious medical
need of the plaintiff.  The plaintiff alleges that he suffered a
fractured arm, but he does not allege that he did not receive
medical staff attention to his broken arm.  The plaintiff's
amended complaint alleges that defendant Loomis is the direct
cause of all disability outlined in the amended complaint, but
this statement is conclusory and contradicted throughout.

There is not an allegation or set of allegations in the
complaint that is or are reasonably construed to state a claim
that a defendant was personally involved in a deliberate
indifference to a serious medical need of the plaintiff.

No conduct resulting in a violation of the plaintiff's
federally protected rights on the part of the corporate defendant
is stated.

It is recommended that the defendants' motions be granted and that the plaintiff's amended complaint be dismissed and that the file be closed.

                              _/s/ J. Andrew Smyser_
                              J. Andrew Smyser
                              Magistrate Judge

Dated:    November 4, 2005.